## City of New Orleans *v.* City of Baltimore.

Where one of two residuary legatees incurs an expense in protecting their joint interest, and the evidence shows that his act proved beneficial to both, justice requires that he should be reimbursed by his co-legatee to the amount of the expense incurred on his account.

An executor is never entitled to receive more than his commissions, which the law fixes as his exclusive remuneration, for services rendered in the mortuary proceedings.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J.
  J. J. *Michel* and J. *Livingston*, for plaintiff.   *C. Roselius* and *Mott & Frazer*, for defendant and appellant.

Voorhies, J.   The plaintiff and the defendant are the residuary legatees of the estate of *John McDonogh* deceased.

Two suits were instituted for the purpose of testing the validity of the will, one in the Federal courts by the legal heirs of the deceased, and the other by the State of Louisiana in the State courts.

The city of New Orleans employed counsel to represent itself and its co-legatee, the city of Baltimore, stipulating a contingent fee of one hundred thousand dollars, with the reservation : "that the sum stipulated to be paid in the first resolution, in case of success, was based upon the supposition that the city of Baltimor will approve of this agreement, and pay one-half of the said sum of $100,000."

The above agreement was submitted to the municipal authorities of Baltimore, and met the sanction of one branch of the Common Council, whilst in the other branch no action was had upon the subject.   The communications from the Mayor of New Orleans to the Mayor of Baltimore, being suffered to remain unanswered, the suits were entrusted to these four counsel, to-wit: *A. Grailhe, Esq., Randall Hunt, Esq., Robert Preaux, Esq.*, and the executor of *McDonogh's* will, *Christian Roselius, Esq.*

These suits involving the decision of a cause, alike important by the mass of property at stake and especially by the intricate and complicated questions involved in the issue, were tried and finally decided by the Supreme Court of the United States and by the Supreme Court of the State of Louisiana.   The will being declared valid, the city of New Orleans paid the stipulated fee of $100,000 to the counsel employed by her on her own behalf and on behalf of the city of Baltimore

Hence the present suit for the recovery of $50,000.

The payment of this fee was made under remarkable circumstances.

The matter being submitted to the City Attorney, the opinion given was that the plaintiff was liable only for one-half, and that the counsel had to look to the defendant for the payment of the other half.  Those gentlemen, in the opinion they prepared on this occasion, expressed their conviction that they had their recourse upon the city of New Orleans for the whole amount ; and they concluded their argument as follows :

  " But, independently of these considerations, it is perfectly clear that the city of Baltimore is bound to credit the city of New Orleans for the amount of one half of the sum expended for the preservation of the common property, whether there has been an express acquiescence on its part or not.   Under such a state of

79

facts, one joint proprietor is the agent of the other, and his acts done in good faith are binding on all. Our contract is with one of the joint owners of the property, worth upwards of $4,000,000; it follows as an undeniable consequence that the party who has contracted the obligation must pay us and look to the other joint owner for the reimbursement of his share."

The following is a letter addressed by *Mr. Roselius* to the commissioners and agents of the *McDonogh* estate, to-wit;

"GENTLEMEN : The claim presented by the commissioners of the Sinking Fund, against you, for $100,000 paid to lawyers for defending the will of the testator in the suits brought by the States of Louisiana and Maryland, and by his legal heirs against the executors, etc., cannot be allowed or paid by you. So far as one-half of the claim is concerned, it is not due at all, for in paying it the city of New Orleans discharged its own debt, being one of the universal legatees. There can be no doubt that the city of Baltimore is bound to reimburse to the city of New Orleans one-half of the expense incurred in the defence of the will; but it is a matter which the Board of Commissioners and Agents cannot take upon themselves to settle at present. In my opinion, the city of New Orleans should be credited with the amount which the city of Baltimore is bound to contribute, say, $50,000, and the account ought to be settled when the funds on hand are divided between the two joint owners of the property.

" However this may be, it is certain that the claim cannot be settled at the present time by the Board.

" I am, respectfully, your obedient servant,

"C. ROSELIUS."

The municipal authorities, upon these recommendations, disbursed fifty thousand dollars for the payment of what she conceived to be due by the city of Baltimore. The latter, however, refused to reimburse this amount; and the former is now opposed in the recovery of her claim, upon the ground that the agreement was not a binding one, for the want of assent on the part of the obligor, and that the services in question were wholly useless.

It is not unprofitable to quote a passage from the brief of the defendant's counsel, himself one of the executors of the will, to whom was paid one-fourth of the fee of $100,000, and through whose written recommendations in part had the payment been made. The counsel says :

" Four legal gentlemen were employed, when there is nothing in the record to show that the services of even one was required.

" It is in evidence, that in the court below, and in the Supreme Court of this State, the executors then in possession of the estate of *McDonogh*, were represented by that able jurist, and skillful and profound advocate, *Levi Peirce;* in the Supreme Court of the United States, by two gentlemen of great learning and ability, *Messrs. Brent* and *May;* and, besides, the city of Baltimore was, in the State courts, represented by *Mr. Durant*, the attorney for absent heirs, whose attention and skill could prevent any advantage being taken of his clients. The facts show, that there was no occasion for the employment of the great array of legal talent, for whose services payment is now claimed; if the four gentlemen were well employed, then a greater number might as well be appointed, and the expense charged to the two cities in equal proportions.

" The defendants were well advised as to what the executors were doing, they knew that *Mr. Peirce* had received ten thousand dollars, as the attorney of the executors, and that he claimed ten thousand dollars more, to be allowed him in

case the will of *McDonogh* was sustained; that *Mr. Grivot* was to and did receive 5000 dollars. That *Brent* and *May* were to receive twenty-five thousand dallars, which they did receive. That four thousand two hundred dollars, were paid to *Mr. Graihle*, for the opinion of the French jurisconsults in favor of the validity of the will, and that *Mr. Durant* was to and did receive five thousand dollars, as attorney, for absent heirs. That these fifty-nine thousand dollars, were enough to pay a sufficient number of counsel to argue the case, and that these gentlemen were amply able to protect the interests of all parties.

" This array of figures would be enough to meet almost any attempt to show the value of the services rendered, but when there is no proof of the value of the services, and no such attempt is made, is destructive of all foundation for the plaintiff's case.

" The record shows that the executors paid attorneys and counsellors at law, the sum of sixty-seven thousand two hundred dollars, mostly to defend the will of *John McDonogh*, and the sum of one-hundred thousand dollars, paid by the city of New Orleans to *Messrs. Roselius, Preaux, Graihle* and *Hunt*, raises the sum up to one hundred and sixty-seven thousand two hundred dollars!!"

The above passage from the brief of the defendant's counsel, takes the extreme position that, not only were the services of his three associates useless, but that even his own were not required. It is very possible that, without their services, the suit might have had the same result; but we think that, considering the magnitude of the interests at stake, the protracted nature of the litigation, the complicated matters under adjudication, and the manner in which the services were performed, the course pursued by the city of New Orleans in employing counsel to represent particularly the residuary legatees, was deserving of commendation. 15 Howard, p. 367; 8 An. p. 171. It was the conduct of a prudent *negotiorum gestor* or rather co-parcener. The record shows abundantly that these services were eminently beneficial to both the residuary legatees, and justice requires that the plaintiff should be reimbursed.

But there is a portion of this amount, which connot be recovered in this suit: that is the amount paid to the executor, (*Christian Roselius*), whose commissions the law fixes as his exclusive remuneration for services rendered in the mortuary proceedings. *Baldwin's ex'r.* v. *Carleton*, 15 La. 398. Deduction must therefore be made for one-half of the $25,000 so paid.

It is, therefore, ordered and decreed, that the judgment of the District Court be amended, by reducing the amount thereof to the sum of thirty-seven thousand five hundred dollars; and that, in other respects, the said judgment be affirmed, the plaintiff and appellee paying the costs of appeal.